

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-09-00118-CR

KERRY RAY BELL                                                                    APPELLANT

V.

THE STATE OF TEXAS                                                                    STATE

----------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Kerry Ray Bell of two counts of sexual assault and one count of indecency with a child and assessed his punishment at eighteen years' confinement on each count. The trial court sentenced him accordingly. Appellant brings eight issues challenging his competence to stand trial, the admissibility of his videotaped statement, the absence of a jury instruction regarding the statement, and the admissibility of the testimony of

----

[1]*See* Tex. R. App. P. 47.4.

Natalie Riggs and A.W. and arguing that the cumulative total of errors constituted harmful error under the United States Constitution and the Texas Constitution. Because we hold that the trial court did not err, we affirm the trial court's judgment.

**Background Facts**

The New Horizons home, also referred to as Redbird, in Granbury, Texas, is a home for individuals with mental retardation. Appellant lived at the home with five other men, including A.W. Appellant is mentally retarded and suffers from bipolar disorder, ADD/ADHD, and fetal alcohol syndrome. A.W. is moderately to severely mentally retarded. In 2008, when A.W. was sixteen, he made an outcry to Riggs, one of the caregivers at the home, about a sexual assault by Appellant. Riggs notified her boss, and the police were called.

A female forensic interviewer with the Children's Advocacy Center in Granbury attempted to interview A.W., but he was reluctant to speak to her. He agreed to speak instead to Robert Young, an investigator for the Hood County District Attorney's office. After speaking with Young, A.W. was taken to Cook Children's Hospital in Fort Worth for a sexual assault examination. He told the female nurse there that he had "told the police what happened" and answered, "I don't know," to all other questions she asked. The STD tests were negative, and there was no physical evidence of an assault.

A staff member from Redbird took Appellant to the Hood County District Attorney's office for an interview with Young. Young testified that no law

2

enforcement officer or agency had asked that this be done. Young interviewed Appellant without the staff member being present. Young read Appellant the *Miranda*[2] warnings, and Appellant agreed to speak with him. In the interview, Appellant told Young about three different assaults of A.W.: one occasion of performing oral sex on A.W. and touching A.W.'s penis with his hand and two different instances of anally penetrating A.W. This interview was videotaped.

The trial court conducted a hearing on Appellant's motion to suppress his statement, at which Appellant's attorney did not put on evidence. The State offered Appellant's recorded statement and published the video for the court. Young testified that he did not threaten Appellant and that Appellant was free to leave at any time. The trial court found that Appellant's statement was freely and voluntarily given and denied his motion to suppress.

At trial, Riggs testified that Appellant was not on the same functioning level as A.W. and that she did not believe that Appellant should have been in the home because he functioned at a higher level than the other residents. A.W. also testified. Using a doll, A.W. identified the male genitals of the doll as "privates" and the doll's bottom as the "bo-bo." A.W. testified that Appellant had touched A.W.'s "private" with his hand. He denied that Appellant had ever touched his "bo-bo." The prosecutor asked A.W. if he was sure and if it was hard to talk about, and he said, "Yes." When asked if he "wish[ed] that had never

---

[2]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

3

happened," A.W. nodded. The prosecutor later asked if anyone had ever touched "[A.W.'s] bo-bo so that it hurt," and A.W. answered that Appellant had. He testified that Appellant had touched him with "[Appellant's] private." A.W. insisted that Appellant never put his mouth on A.W.'s penis.

Appellant's attorney introduced some of his mental health records, which indicated that Appellant has an IQ of 66 and an overall age equivalent of eight years and two months. The attorney did not call any witnesses. No one filed a motion to determine Appellant's competence.

Appellant timely appealed.

**Competence to Stand Trial**

In his first and second issues, Appellant argues that the trial court violated his federal right to due process and the mandatory provisions of Texas Code of Criminal Procedure chapter 46B by failing sua sponte to conduct a hearing on competence once evidence sufficient to raise a bona fide doubt as to his competence to stand trial became evident. Article 46B.003(b) of the code of criminal procedure provides that "[a] defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence."[3] Subsection (a) of the article provides that "[a] person is incompetent to stand trial if [he] does not have . . . sufficient present ability to consult with [his] lawyer with a reasonable degree of rational

---

[3]Tex. Code Crim. Proc. Ann. art. 46B.003(b) (West 2006).

4

understanding[] or [does not have] a rational as well as factual understanding of the proceedings against [him]."[4]

Article 46B.004 of the code of criminal procedure provides in relevant part,

> (b) If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial.

> (c) On suggestion that the defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial.[5]

As the Texas Court of Criminal Appeals explained in *Montoya v. State*, bona fide doubt triggers a trial court's competence inquiry:

> If a trial judge has a *bona fide* doubt about the competency of the defendant, he or she shall conduct an informal inquiry to determine if there is evidence that would support a finding of incompetence. A *bona fide* doubt may exist if the defendant exhibits truly bizarre behavior or has a recent history of severe mental illness or at least moderate mental retardation.[6]

Because the record raised concerns in this court regarding Appellant's competence to stand trial, we abated this appeal and remanded the cause to the trial court for an inquiry into Appellant's competence. The conscientious trial judge ordered a psychological examination of Appellant. Dr. Barry Norman reviewed existing records; conducted a clinical interview, mental status

---

[4]*Id.* art. 46B.003(a).

[5]*Id.* art. 46B.004(b), (c).

[6]291 S.W.3d 420, 425 (Tex. Crim. App. 2009).

5

examination, and behaviorial observations; and verbally administered certain competence-related questions. He did not administer any standard testing to determine intelligence level or adaptive level but did review existing records. Dr. Norman reported that, in his opinion, Appellant was competent to stand trial at the time of trial and competent to stand trial at the time of the assessment.

The trial court then conducted a hearing on Appellant's competence and allowed Appellant to present all evidence he desired regarding his competence. Appellant called trial counsel to testify. Trial counsel had little recollection of efforts to determine Appellant's competence. Trial counsel testified that, in his opinion, Appellant had been competent to stand trial, although trial counsel had objected that Appellant's statement was inadmissible because Appellant "had not voluntarily or actually intelligently and knowingly waived his rights" because of his "mental deficiency." Trial counsel testified that Appellant was able to converse with him and that he believed that Appellant understood the charges against him. In response to questions from the court, trial counsel testified that Appellant was able to communicate with him with a reasonable degree of rational understanding and to aid in his defense and that Appellant had a factual as well as a rational understanding of the charges against him.

Appellant's trial counsel also testified that at trial he "was aware that [Appellant] was mentally deficient[, but trial counsel did not] know [at the competence hearing] that [he] was specifically aware [during the trial] of . . . the diagnosis of [Appellant's] mental condition." Trial counsel also testified that he

6

had read the report from Pecan Valley and that one of his biggest arguments to the jury had been that Appellant was mentally retarded. Trial counsel also admitted that it would be in his best interests regarding a claim of ineffective assistance of counsel for Appellant to be found competent to stand trial.

The trial court has now conducted an inquiry into Appellant's competence and has found that Appellant was not incompetent at the time of trial. Although Appellant challenged the trial court's prior failure to conduct the inquiry into competence, he has not challenged the trial court's determination that he was competent. We overrule Appellant's first and second issues as moot.

**Admissibility of Appellant's Statement**

In his third and fourth issues, Appellant argues that the trial court violated his federal right to due process of law as well as article 38.22 of the code of criminal procedure by denying his motion to suppress his videotaped statement and by admitting the statement into evidence because the statement was involuntary.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.[7] In reviewing the trial court's decision, we do not engage in our own factual review.[8] The trial judge is the sole trier of fact and

---

[7]*Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

[8]*Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).

7

judge of the credibility of the witnesses and the weight to be given their testimony.[9] Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.[10] But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo.[11]

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling.[12] When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings.[13] We then review the trial court's legal ruling

---

[9]*Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006).

[10]*Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

[11]*Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

[12]*Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

[13]*Kelly*, 204 S.W.3d at 818–19.

8

de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling.[14]

The trial court found that

- the police had given Appellant "all of the advice, information and warnings required" by law before questioning him or taking his statement and that the "advice, information and warnings" complied with the law;

- Appellant intelligently and knowingly waived his rights in connection with his making of the statement; and

- Appellant voluntarily made and signed the statement in compliance with the law.

As Appellant points out, claims of involuntariness under article 38.22 do not require police overreaching but can involve "sweeping inquiries into the state of mind of a criminal defendant."[15] Appellant also relies on *Blackburn v. Alabama*[16] generally, as well as other case law, in arguing that an accused person's deficient mental condition renders his confession involuntary under federal law. As this court pointed out in *Franks v. State*, the question to be answered in cases in which a defendant may have a diminished mental capacity is "whether the accused's mental impairment is so severe that he was incapable

---

[14]*Id.* at 818.

[15]*Oursbourn v. State*, 259 S.W.3d 159, 172 (Tex. Crim. App. 2008).

[16]361 U.S. 199, 80 S. Ct. 274 (1960).

9

of understanding the meaning and effect of his statement."[17]  Mental retardation does not automatically render a confession involuntary.[18]

Appellant argues here and argued below that because he was suffering from mental retardation, he did not knowingly and intelligently waive his rights when he made the recorded statement.  At the hearing on the motion to suppress, Appellant relied exclusively on the trial court's awareness that he lived in a group home for those suffering with mental retardation, that he was on multiple medications, and that he had been diagnosed with various psychological ailments, including bipolar disorder.  He concedes that he did not offer any evidence at the hearing on the motion to suppress.  The State offered Young's testimony.

Employees of the group home transported Appellant to the police department to be interviewed by the police.  Upon entering the interrogation room, Appellant faced the investigator, who wore a badge and a gun.  No counselor or parent was present during the interrogation, but security guards were present in the building.

Young read Appellant his *Miranda* warnings, and afterward, Appellant agreed to talk to the police.  The record also reflects that Appellant was not under arrest, but had no other place to go.  Appellant's statement was both recorded

---

[17]90 S.W.3d 771, 785 (Tex. App.—Fort Worth 2002, no pet.).

[18]*Penry v. State*, 903 S.W.2d 715, 746 (Tex. Crim. App.), *cert. denied*, 516 U.S. 977 (1995).

and reduced to writing. There is no evidence that he was forced or coerced to give the statement.

Appellant offered no controverting evidence. Appellant did not meet or refute the testimony regarding the voluntariness of his statement.

There is no indication that Appellant did not understand the *Miranda* warnings and no evidence that he was coerced, that his will was overborne by the police, or that he did not understand his rights. Based on the record before us, we hold that the trial court did not err by denying Appellant's motion to suppress his statement. The trial court therefore did not abuse its discretion by admitting the statement.[19] We overrule Appellant's third and fourth issues.

**Jury Instruction**

In his fifth issue, Appellant argues that the trial court erred by failing to submit the issue of voluntariness of Appellant's statement to the jury. Appellant did not object to the jury charge on that ground. When the evidence raises an issue of the "voluntariness" of a defendant's statement under article 38.22, the trial court must give a general voluntariness instruction under sections six and seven of that article because it is the "law applicable to the case," but when the defendant fails to request this statutorily mandated instruction, the trial court's

---

[19]*See Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App.), *cert. denied*, 549 U.S. 1056 (2006).

failure to include it is reviewed only for egregious harm under *Almanza*.[20] Because there is no evidence that Appellant's statement was not freely and voluntarily made, the trial court did not err by omitting the instruction. We overrule Appellant's fifth issue.

**Testimony of A.W.**

In his sixth issue, Appellant argues that the trial court erred by admitting A.W.'s testimony because he was not competent to testify. Before A.W. testified, the trial court held a hearing regarding his competence to testify. The trial court found, based on all the evidence it heard, that A.W. was competent to testify at trial. Appellant did not object to the admission of A.W.'s testimony below. Consequently, Appellant has not preserved his complaint.[21] In the interest of justice, we also point out that based on our review of the hearing, there was no evidence that A.W. was not competent to testify at trial, and the trial court did not abuse its discretion by admitting his testimony. We overrule Appellant's sixth issue.

---

[20] *Almanza v. State*, 686 S.W.2d 157, 171–72 (Tex. Crim. App. 1985) (op. on reh'g); *see also* Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006); *Oursbourn*, 259 S.W.3d at 165, 174–82.

[21] *See* Tex. R. App. P. 33.1(a)(1), (2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

12

**Testimony of Natalie Riggs**

In his seventh issue, Appellant argues that the trial court erred by admitting Riggs's testimony because she was not qualified as an expert witness. Appellant complains that Riggs, a non-expert lay witness, was allowed to testify as an expert and give an expert opinion that was beyond her training, knowledge, and expertise. Appellant made only one objection at trial under rule 702.[22] Appellant did not object to subsequent testimony on the same subject. Consequently, Appellant did not properly preserve this issue for appellate review.[23] In the interest of justice, we point out that Riggs's testimony was admissible because, as the State argues, she testified not as an expert but as a lay witness regarding her opinions or inferences drawn from what she observed in her experiences as a caregiver to both A.W. and Appellant.[24] We therefore overrule Appellant's seventh issue.

**Cumulative Error**

Having overruled Appellant's first seven issues, we overrule his eighth issue, alleging cumulative error, as moot.

---

[22]*See* Tex. R. Evid. 702 (providing expert witness rule).

[23]*See Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003) (citing *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991)); *Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App.), *cert. denied,* 528 U.S. 1026 (1999); *see also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (holding erroneous admission of evidence will not require reversal when other such evidence was received without objection).

[24]*See Martinez v. State*, 22 S.W.3d 504, 507 (Tex. Crim. App. 2000).

**Conclusion**

Having overruled Appellant's eight issues, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, MCCOY, and MEIER, JJ.

MCCOY, J. concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 2, 2011